# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: _____

SCOTTSDALE INDEMNITY COMPANY,
     Plaintiff,

v.

CONVERCENT, INC.,
O'NEAL PATRICK QUINLAN, III,
AND STEVE FOSTER,

     Defendants.

---

## SCOTTSDALE INDEMNITY COMPANY'S
## COMPLAINT FOR DECLARATORY JUDGMENT

---

Plaintiff Scottsdale Indemnity Company ("Scottsdale"), for its complaint for declaratory judgment, alleges on knowledge, information and belief:

## NATURE OF ACTION

1.     Scottsdale files this action to obtain a judicial determination and declaration as to the parties' respective rights and obligations under Business and Management Indemnity Policy No. EKI3159121 issued to Convercent, Inc. ("Convercent") for the policy period May 30, 2015 to May 30, 2016 (the "2015-16 Policy") and Policy No. EKI3189867 issued to Convercent for the policy period May 30, 2016 to May 30, 2017 (the "2016-17 Policy") for a declaration that no coverage is available for Convercent or the individual defendants under an insurance policy issued by Scottsdale for the lawsuit captioned *Eugene F. Ferraro v. Convercent, Inc., et al.*, Civ. A. No. 1:17-cv-00781-STV (D. Colo.), and earlier related matters (the "*Ferraro* Action"). In support of its complaint, Scottsdale alleges on knowledge, information and belief as follows:

## THE PARTIES

2.      Plaintiff Scottsdale is a corporation organized and existing under the laws of Ohio, with its principal place of business located in Scottsdale, Arizona.  Scottsdale legally transacts insurance business in Colorado and within the geographical jurisdiction of the United States District Court for the District of Colorado.

3.      Defendant Convercent is a corporation organized and existing under the laws of Delaware, with its principal place of business located in Denver, Colorado, which is within the geographical jurisdiction of the United States District Court for the District of Colorado.

4.      Defendant O'Neal Patrick Quinlan, III ("Quinlan") is a citizen of Colorado.

5.      Defendant Steve Foster ("Foster") is a citizen of Colorado.

## JURISDICTION AND VENUE

6.      This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure for the purpose of determining a question of actual controversy between the parties.

7.      This action is ripe for adjudication because the parties dispute whether Scottsdale has a duty to defend under the 2015-16 and 2016-17 Policies in connection with the *Ferraro* Action.

8.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 2201 and 2202.  There is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  The Policies were issued by Scottsdale to Convercent in this District.  Defendant Convercent maintains its principal

place of business in this District, and the individual Defendants are citizens of Colorado.

Further, the *Ferraro* Action, which gave rise to this insurance coverage dispute, is pending in

this District (Civ. A. No. 1:17-cv-00781-STV (D. Colo.)).

## FACTUAL ALLEGATIONS

10.     This insurance coverage action arises out of the *Ferraro* Action, which concerns

alleged employment discrimination purportedly committed against the claimant in the underlying

lawsuit, Eugene F. Ferraro ("Ferraro"), who previously made a demand and filed an EEOC

charge against Convercent before filing his complaint in the *Ferraro* Action.

### The Ferraro Demand

11.     On October 20, 2015, Ferraro sent a letter to Convercent and eight Convercent

directors and officers and members of Convercent's Board of Directors.  *See* 10/20/2015 Letter

from E. Ferraro to A. Wasti, et al. (Ex. A) ("the Ferraro Demand").

12.     In the Ferraro Demand, Ferraro asserted that his employment had been terminated

because of his age, which allegedly violated federal law, including the ADEA and Age

Discrimination Act of 1975.

13.     The Ferraro Demand was sent to Convercent and its directors, officers and

executives during the policy period of the 2015-16 Policy.

14.     On December 15, 2015, Ferraro sent a letter to reiterate and follow up on the

Ferraro Demand.  *See* 12/15/2015 Letter from E. Ferraro to A. Wasti, et al. (Ex. B).  The

December 15, 2015 letter likewise was sent during the policy period of the 2015-16 Policy.

### The Ferraro EEOC Charge

15.     On August 5, 2016, the EEOC received a Charge of Discrimination filed by

Ferraro against Convergent (the "Ferraro EEOC Charge").  *See* 8/4/2016 Ferraro EEOC Charge (Ex. C).

16.     The Ferraro EEOC charge asserted that Ferraro had "been discriminated and retaliated against because of [his] age (63) in violation of the Age Discrimination in Employment Act of 1967, as amended." *See* 8/4/2016 Ferraro EEOC Charge (Ex. C).

17.     The Ferraro EEOC charge also attached a July 12, 2016 letter from counsel representing Ferraro, which likewise alleged that Convergent discriminated against Ferraro in violation of the Age Discrimination in Employment Act. *See* 8/4/2016 Ferraro EEOC Charge (Ex. C).

## The *Ferraro* Action

18.     On March 28, 2017, Ferraro filed his complaint in the *Ferraro* Action.  *See* *Ferraro* Action Complaint (Ex. D).  As used in this Complaint, the term "*Ferraro* Action" includes the Ferraro Demand and the Ferraro EEOC Charge.

19.     In his complaint, Ferraro asserts allegations of age discrimination under the Age Discrimination in Employment Act in connection with his termination from Convergent.

20.     In his complaint, Ferraro specifically references the Ferraro Demand (and December 15, 2016 follow up letter), as well as the Ferraro EEOC Charge that he filed against Convergent, which resulted in a notice of right to sue issued by the EEOC on February 10, 2017, according to the complaint.

21.     Based on these and other allegations, Ferraro asserts twelve causes of action: for violation of the Age Discrimination in Employment Act, retaliation, disparate treatment, wrongful discharge, breach of contract, breach of duty of good faith and fair dealing, promissory

estoppel, fraudulent misrepresentation, negligent misrepresentation, fraudulent inducement, civil conspiracy and violation of Colorado Organized Crime Control Act.  Ferraro seeks unspecified damages, rescission of the transfer of shares, treble damages, attorney's fees and costs, interest and other damages.

## The Policies

22.     Scottsdale issued the 2015-16 Policy to Convercent for the policy period May 30, 2015 to May 30, 2016.  *See* 2015-16 Policy, Declarations, Item No. 2 (Ex. E).

23.     Scottsdale issued the 2016-17 Policy to Convercent for the policy period May 30, 2016 to May 30, 2017.  *See* 2016-17 Policy, Declarations, Item No. 2 (Ex. F).

24.     The Policies each have a $3 million aggregate for all Loss, and an additional $1 million aggregate for "Costs, Charges and Expenses," subject to a $4 million maximum aggregate for claims arising under the Employment Practices Coverage Section (subject to a $15,000 retention) and the Directors and Officers and Company Coverage Section.  *See* Policies, Declarations Item No. 3 (as amended by Endorsement No. 35 of the Policies).

25.     For purposes of this coverage action, the 2015-16 Policy and the 2016-17 Policy (together, the "Policies") contain substantially the same terms and conditions, unless otherwise noted.

## The Employment Practices Coverage Section

26.     Subject to all of its terms and conditions, the Policies' Employment Practices Coverage Section (the "EP Coverage Section") provides that

> **Insurer** shall pay the **Loss** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of an **Employment Practices Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for an **Employment Practices Wrongful**

**Act** taking place prior to the end of the **Policy Period**.

*See* Policies, EP Section, Section A.1.

27.     The EP Coverage Section of the Policies provides that

[t]he **Insureds** shall, as a condition precedent to their rights to payment under this Coverage Section only, give to **Insurer** written notice of any **Claim** made as soon as practicable, but in no event later than sixty (60) days after the end of the Policy Period.

And the EP Coverage Section further provides that "[a] **Claim** shall be deemed to have been first made against the **Insureds** on the date an **Insured** who is an executive officer, director or general counsel becomes aware of such **Claim**." *See* Policies, EP Coverage Section, Section E.1 (as amended by Endorsement Nos. 10 and 11 of the 2015-16 Policy and Endorsement Nos. 11 and 12 of the 2016-17 Policy).

28.     The EP Coverage Section defines "Claim" to include "Employment Practices Claim." *See* Policies, EP Coverage Section, Section B.1.a.  The EP Coverage Section in turn defines "Employment Practices Claim" to mean:

    a.    a written demand against an **Insured** for damages or other relief;

    b.    a civil, judicial, administrative, regulatory or arbitration proceeding or a formal governmental investigation against an **Insured** seeking damages or other relief, commenced by the service of a complaint or similar pleading, including an appeal therefrom;

    c.    a civil proceeding against an **Insured** before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body, commenced by the filing of a notice of charges, investigative order or similar document; or

    d.    a criminal proceeding brought for an **Employment Practices Wrongful Act** in a court outside of the United States against any **Insured**, commenced by a return of an indictment or similar document, or receipt for filing of a notice of charges;

brought by or on behalf of an **Employee** in their capacities as such.  **Employment**

- 6 -

> **Practices Claim** does not include a labor grievance proceeding, which is pursuant to a collective bargaining agreement.

*See* Policies, EP Coverage Section, Section B.5.

29.     The EP Coverage Section defines "Employee" to mean "any person who was, now is or shall become . . . a full-time employee or part-time employee of the **Company**" and "any natural person who is a leased employee or is contracted to perform work for the **Company**, or are independent contractors for the **Company**, but only to the extent such individual performs work or services for or on behalf of the **Company**." *See* Policies, EP Coverage Section, B.4 (as amended by Endorsement No. 3 in the Policies).

30.     The EP Coverage Section defines "Wrongful Act" to include "Employment Practices Wrongful Act." *See* Policies, EP Coverage Section, Section B.15.a.  The EP Coverage Section in turn defines "Employment Practices Wrongful Act" to include any "violation of any common or statutory federal, state, or local law prohibiting any kind of employment-related discrimination," "wrongful discharge or termination of employment," "breach of an actual or implied employment contract," "employment-related . . . misrepresentation," and "Retaliation." *See* Policies, EP Coverage Section, Section B.6.a., d., e., g., and k. (as amended by Endorsement No. 5 in the Policies).

31.     The EP Coverage Section also provides that

> All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** shall be deemed to be a single **Claim,** and such **Claim** shall be deemed to have been made at the earliest of the following times, regardless of whether such date is before or during the **Policy Period**:
>
> > a.     the time at which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** is first made; or
> >
> > b.     the time at which the **Claim** involving the same **Wrongful Act** or

> **Interrelated Wrongful Acts** shall be deemed to have been made pursuant to Section E.2. below.

*See* Policies, EP Coverage Section, Section D.3.

32.     The EP Coverage Section defines "Interrelated Wrongful Acts" to mean all

"**Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event,

transaction, cause or series of facts, circumstances, situations, events, transactions or causes."

*See* Policies, EP Coverage Section, Section 9.

## The D&O Coverage Section

33.     Subject to all of its terms and conditions, the Policies' Directors and Officers and

Company Coverage Section (the "D&O Coverage Section") provides that

> 1.     **Insurer** shall pay the **Loss** of the **Directors and Officers** for which the **Directors and Officers** are not indemnified by the **Company** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

> 2.     The **Insurer** shall pay the **Loss** of the **Company** for which the **Company** has indemnified the **Directors and Officers** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the Insurer pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

> 3.     The **Insurer** shall the pay the **Loss** of the **Company** which the **Company** becomes legally obligated to pay by reason of a **Claim** first made against the **Company** during the **Policy Period** or, if applicable, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

*See* Policies, D&O Coverage Section, Section A.1-3.

34.     The D&O Coverage Section provides that

> [t]he **Insureds** shall, as a condition precedent to their rights to payment under this Coverage Section only, give **Insurer** written notice of any **Claim** as soon as practicable, but in no event later than sixty (60) days after the end of the **Policy Period**.

And the D&O Coverage Section further provides that "[a] **Claim** shall be deemed to have been first made against the **Insureds** on the date an **Insured** who is an executive officer, director or general counsel becomes aware of such **Claim**." *See* Policies, D&O Coverage Section, Section E.1 (as amended by Endorsement No. 9 in the 2015-16 Policy and Endorsement No. 10 in the 2016-17 Policy).

35.     The D&O Coverage Section defines "Insured" to mean "the **Company** and the **Directors and Officers**." *See* Policies, D&O Coverage Section, Section B.5. "Company" is defined to mean Convercent. *See* Policies, General Terms and Conditions, Section B.2.a, B.7. and Declarations, Item 1. "Directors and Officers" is defined to mean "a duly elected or appointed director, officer, or similar executive of the **Company**, or any member of the management board of the **Company**" and "a person who was, is or shall become a full-time or part-time employee of the **Company**." *See* Policies, D&O Coverage Section, Section B.4.

36.     The D&O Coverage Section defines "Claim" to include "a written demand against any Insured for monetary damages or non-monetary or injunctive relief." *See* Policies, D&O Coverage Part, Section B.1 (as amended by Endorsement Nos. 24, 29 and 39).

37.     The D&O Coverage Section also provides that

> All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** shall be deemed to be a single **Claim,** and such **Claim** shall be deemed to have been made at the earliest of the following times, regardless of whether such date is before or during the **Policy Period**:
>
> > c.      the time at which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** is first made; or

        d.      the time at which the **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to have been made pursuant to Section E.2. below.

*See* Policies, D&O Coverage Section, Section D.3.

38.     The D&O Coverage Section defines "Wrongful Act" to mean "any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act allegedly committed or attempted by" any "Directors and Officers" or the "Company," and "Interrelated Wrongful Acts" means all "**Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of facts, circumstances, situations, events, transactions or causes." *See* Policies, D&O Coverage Section, Sections 6 and 9.

39.     The D&O Coverage Section provides that Scottsdale shall not be liable for "Loss" under the coverage section on account of any "Claim" "brought or maintained by, on behalf of, in the right of, or at the direction of the **Insured** in any capacity, any **Outside Entity** or any person or entity that is an owner of or joint venture participant in any **Subsidiary** in any respect and whether or not collusive," subject to certain exceptions not applicable here. *See* Policies, D&O Section, Section C.1.e. (the "Insured vs. Insured Exclusion") (as amended by Endorsement Nos. 21-23 and 26 in the 2015-16 Policy and Endorsement Nos. 7 and 22-24 in the 2016-17 Policy).

40.     The D&O Coverage Section also provides that Scottsdale shall not be liable for "Loss" under the coverage section on account of any "Claim" "alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any employment or employment-related matters brought by or on behalf of or on the right of an applicant for employment with the **Company,** or any of the **Directors and Officers**,

including any voluntary, seasonal, temporary, leased or independently contracted employee of

the **Company**." *See* Policies, D&O Section, Section C.1.m. (the "Employment Matters

Exclusion").

## The Coverage Dispute

41.     Convercent provided notice of the Ferraro EEOC Charge on August 29, 2016. *See*

8/29/2016 Notice of Claim (Ex. G).

42.     By letter dated September 23, 2016, Scottsdale denied coverage for the Ferraro

EEOC Charge under the 2015-16 Policy and the 2016-17 Policy and otherwise reserved its rights

to raise additional coverage defenses under the Policies and applicable law. *See* September 23,

2016 Coverage Letter (Ex. H).

43.     Convercent provided notice of the *Ferraro* Action on April 4, 2017. *See* 4/6/2017

Notice of Claim (Ex. I).

44.     By letter dated April 21, 2017, Scottsdale denied coverage for the *Ferraro* Action

under the 2015-16 Policy and the 2016-17 Policy and otherwise reserved its rights to raise

additional coverage defenses under the Policies and applicable law. *See* 4/21/2017 Coverage

Letter (Ex. J).

## COUNT I

### For a declaration that there is no coverage for the *Ferraro* Action
### under the EP Coverage Section of the 2015-16 Policy

45.     Scottsdale realleges and incorporates by reference the allegations in Paragraphs 1

through 44 of this Complaint.

46.     The EP Coverage Section of the 2015-16 Policy provides specified coverage for an

"Employment Practices Claim" first made during the May 30, 2015 to May 30, 2016 policy

period and, as a condition precedent to coverage, reported to Scottsdale no later than 60 days after May 30, 2016, the end of the policy period for the 2015-16 Policy.  *See* 2015-16 Policy, EP Coverage Section, Sections A.1 and E.1 (as amended by Endorsement Nos. 10-11 in the 2015-16 Policy).

47.    The EP Coverage Section of the 2015-16 Policy defines "Employment Practices Claim" to include, in relevant part, a "a written demand against an **Insured** for damages or other relief."  *See* 2015-16 Policy, EP Coverage Section, Section B.5.a.

48.    Ferraro asserted the Ferraro Demand on October 20, 2015.

49.    The *Ferraro* Action, the Ferraro EEOC Charge and the Ferraro Demand involved "Wrongful Acts" and/or "Interrelated Wrongful Acts" that are deemed to be a single "Claim" first made on October 20, 2015, when the Ferraro Demand was sent to and received by Convercent, its directors, officers and executives.  *See* 2015-16 Policy, EP Coverage Section, Sections B.9, B.15, D.3, E.1 (as amended by Endorsement No. 10 in the 2015-16 Policy).

50.    Because notice of the "Employment Practices Claim" at issue in the *Ferraro* Action – which is deemed first made on October 20, 2015 – was not provided until August 29, 2016, more than 60 days after the May 30, 2016 end of the policy period of the 2015-16 Policy, the *Ferraro* Action does not trigger coverage under the EP Coverage Section of the 2015-16 Policy.

51.    Accordingly, Scottsdale is entitled to a declaration that no coverage is available for *Ferraro* Action under the EP Section of the 2015-16 Policy.

## COUNT II

### For a declaration that there is no coverage for the *Ferraro* Action under the EP Coverage Section of the 2016-17 Policy

52.     Scottsdale realleges and incorporates by reference the allegations in Paragraphs 1 through 51 of this Complaint.

53.     The EP Coverage Section of the 2016-17 Policy provides specified coverage for an "Employment Practices Claim" first made during the May 30, 2016 to May 30, 2017 policy period and, as a condition precedent to coverage, reported to Scottsdale as required under the terms of the Policy.  *See* 2016-17 Policy, EP Coverage Section, Sections A.1 and E.1 (as amended by Endorsement Nos. 11 and 12 of the 2016-17 Policy).

54.     The EP Coverage Section of the 2016-17 Policy defines "Employment Practices Claim" to include, in relevant part, a "a written demand against an **Insured** for damages or other relief."  *See* 2016-17 Policy, EP Coverage Section, Section B.5.a.

55.     Ferraro asserted the Ferraro Demand on October 20, 2015.

56.     The *Ferraro* Action, the Ferraro EEOC Charge and the Ferraro Demand involved "Wrongful Acts" and/or "Interrelated Wrongful Acts" that are deemed to be a single "Claim" first made on October 20, 2015, when the Ferraro Demand was sent to Convercent.  *See* 2016-17 Policy, EP Coverage Section, Sections B.9, B.15, D.3 and E.1 (as amended by Endorsement No. 11 in the 2016-17 Policy).

57.     Because the "Employment Practices Claim" at issue in the *Ferraro* Action – which is deemed first made on October 20, 2015 – was first made prior to the May 30, 2016 inception of the 2016-17 Policy, the *Ferraro* Action does not trigger coverage under the EP Coverage Section of the 2016-17 Policy.

58.     Accordingly, Scottsdale is entitled to a declaration that no coverage is available for *Ferraro* Action under the EP Section of the 2016-17 Policy.

## COUNT III

### For a declaration that there is no coverage for the *Ferraro* Action under the D&O Coverage Section of the 2015-16 Policy

59.     Scottsdale realleges and incorporates by reference the allegations in Paragraphs 1 through 58 of this Complaint.

60.     The D&O Coverage Section of the 2015-16 Policy provides specified coverage for a "Claim" first made during the May 30, 2015 to May 30, 2016 policy period and, as a condition precedent to coverage, reported to Scottsdale no later than 60 days after May 30, 2016, the end of the policy period for the 2015-16 Policy.  *See* 2015-16 Policy, D&O Coverage Section, Sections A.1-3 and E.1 (as amended by Endorsement No. 9 in the 2015-16 Policy).

61.     The D&O Coverage Section of the 2015-16 Policy defines "Claim" to include, in relevant part, a "a written demand against an **Insured** for monetary damages or non-monetary or injunctive relief."  *See* 2015-16 Policy, D&O Coverage Section, Section B.1.a.

62.     Ferraro asserted the Ferraro Demand on October 20, 2015.

63.     The *Ferraro* Action, the Ferraro EEOC Charge and the Ferraro Demand involved "Wrongful Acts" and/or "Interrelated Wrongful Acts" that are deemed to be a single "Claim" first made on October 20, 2015, when the Ferraro Demand was sent to Convercent.  *See* 2015-16 Policy, D&O Coverage Section, Sections B.6, B.9, D.3 and E.1 (as amended by Endorsement No. 9 in the 2015-16 Policy).

64.     Because notice of the "Claim" at issue in the *Ferraro* Action – which is deemed first made on October 20, 2015 – not reported to Scottsdale until August 29, 2016, well after 60

days after the May 30, 2016 end of the policy period of the 2015-16 Policy, the *Ferraro* Action

does not trigger coverage under the D&O Coverage Section of the 2015-16 Policy.

65.     Accordingly, Scottsdale is entitled to a declaration that no coverage is available for

the *Ferraro* Action under the D&O Section of the 2015-16 Policy.

## COUNT IV

### For a declaration that there is no coverage for the *Ferraro* Action under the D&O Coverage Section of the 2016-17 Policy

66.     Scottsdale realleges and incorporates by reference the allegations in Paragraphs 1

through 65 of this Complaint.

67.     The D&O Coverage Section of the 2016-17 Policy provides specified coverage for

a "Claim" first made during the May 30, 2016 to May 30, 2017 policy period and, as a condition

precedent to coverage, reported to Scottsdale as required under the terms of the Policy.  *See*

2016-17 Policy, D&O Coverage Section, Sections A.1-3 and E.1 (as amended by Endorsement

No. 10).

68.     The D&O Coverage Section of the 2016-17 Policy defines "Claim" to include, in

relevant part, a "a written demand against an Insured for monetary damages or non-monetary or

injunctive relief."  *See* 2016-17 Policy, D&O Coverage Section, Section B.1.a.

69.     Ferraro asserted the Ferraro Demand on October 20, 2015.

70.     The *Ferraro* Action, the Ferraro EEOC Charge and the Ferraro Demand involved

"Wrongful Acts" and/or "Interrelated Wrongful Acts" that are deemed to be a single "Claim"

first made on October 20, 2015, when the Ferraro Demand was sent to Convercent.  *See* 2016-17

Policy, D&O Coverage Section, Sections B.6, B.9, D.3 and E.1 (as amended by Endorsement

No. 10 in the 2016-17 Policy).

71.     Because the "Claim" at issue in the *Ferraro* Action – which is deemed first made on October 20, 2015 – was first made prior to the May 30, 2016 inception of the 2016-17 Policy, the *Ferraro* Action does not trigger coverage under the D&O Coverage Section of the 2016-17 Policy.

72.     Accordingly, Scottsdale is entitled to a declaration that no coverage is available for the *Ferraro* Action under the D&O Section of the 2016-17 Policy.

**COUNT V**

**For a declaration that coverage for the *Ferraro* Action**
**is barred by the Employment Matter Exclusion in**
**the D&O Coverage Section of the 2015-16 and 2016-17 Policies**

73.     Scottsdale realleges and incorporates by reference the allegations in Paragraphs 1 through 72 of this Complaint.

74.     As set forth above, the Employment Matter Exclusion in the 2015-16 and 2016-17 Policies bars coverage for any "Claim" "alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any employment or employment-related matters brought by or on behalf of or on the right of an applicant for employment with the **Company,** or any of the **Directors and Officers**, including any voluntary, seasonal, temporary, leased or independently contracted employee of the **Company**." *See* Policies, D&O Coverage Section, Section C.1.m.

75.     Ferraro is a "Director or Officer" under the Policies because he is or was a director, officer, executive, employee or independent contractor of Convercent. *See* Policies, D&O Coverage Section, Section B.4 (as amended by Endorsement No. 20 of the 2015-16 Policy and Endorsement No. 21 of the 2016-17 Policy).

76.     The Employment Matter Exclusion bars coverage because the *Ferraro* Action alleges, is based upon and arises out of employment or employment-related matters brought by Ferraro.

77.     Accordingly, Scottsdale is entitled to a declaration that coverage for the *Ferraro* Action is barred by the Employment Matter Exclusion under the D&O Section of the 2015-2016 and 2016-17 Policies.

## COUNT VI

**For a declaration that coverage for the *Ferraro* Action
is barred by the Insured vs. Insured Exclusion
in the D&O Coverage Section of the 2015-16 and 2016-17 Policies**

78.     Scottsdale realleges and incorporates by reference the allegations in Paragraphs 1 through 77 of this Complaint.

79.     As set forth above, the Insured vs. Insured Exclusion in the 2015-16 and 2016-17 Policies bars coverage for "Loss" on account of any "Claim" brought or maintained by, on behalf of, in the right of, or at the direction of any "Insured" in any capacity in any respect and whether or not collusive.  *See* Policies, D&O Coverage Section, Section C.1.e.

80.     The 2015-16 and 2016-17 Policies define "Insured" to include "Directors and Officers" of Convercent, which in turn means "any person who was" "a duly elected or appointed director, officers or similar executive of" Convercent, or "a person who was" "a full-time or part-time employee of Convercent."  *See* Policies, D&O Coverage Section, Sections B.4 and B.5.

81.     Ferraro is an "Insured" under the Policies by virtue of his status as a current or former director, officer, executive and/or employee of Convercent – in particular, its CEO and

former Chie Ethics Officer.

82.   The Insured vs. Insured Exclusion bars coverage because the *Ferraro* Action was brought and maintained by Ferraro, a "Insured."

83.   Accordingly, Scottsdale is entitled to a declaration that coverage for the *Ferraro* Action is barred by the Insured vs. Insured Exclusion under the D&O Section of the 2015-16 and 2016-17 Policies.

**COUNT VII**

**For a declaration that coverage for the *Ferraro* Action under
the D&O Coverage Section and the EP Coverage Section
of the 2015-16 and 2016-17 Policies
Is Limited in Whole or in Part on Other Grounds**

84.   Scottsdale realleges and incorporates by reference the allegations in Paragraphs 1 through 83 of this Complaint.

85.   Coverage for the *Ferraro* Action under the D&O Coverage Section and the EP Coverage Section of the 2015-16 and 2016-17 Policies is limited in whole or in part on other grounds.

86.   In connection with the *Ferraro* Action, Scottsdale has reserved and continues to reserve its rights generally and under the numerous provisions of the 2015-16 and 2016-17 Policies, including but not limited to the D&O Coverage Section, Sections B.7 (as amended by Endorsement No. 30 in the Policies), C.1.f. (as amended by Endorsement Nos. 2 in the Policies), C.1.g., C.1.o., and C.2.a, and the EP Coverage Section, Sections B.10, C.5 and C.10, and General Terms and Conditions Section D.2 of the Policies.

87.   Accordingly, Scottsdale is entitled to a declaration that coverage for the *Ferraro* Action is limited in whole or in part by the foregoing provisions of the 2015-16 Policy and 2016-

17 Policy.

WHEREFORE, Scottsdale respectfully requests that the Court enter judgment in its favor and declare that Scottsdale has no obligation to defend or indemnify Defendants Convercent, Quinlan and Foster in connection with the *Ferraro* Action, and, more specifically:

(A)    Enter judgment that, for the reasons set forth in Count I, there is no coverage for the *Ferraro* Action under the EP Coverage Section of the 2015-16 Policy;

(B)    Enter judgment that, for the reasons set forth in Count II, there is no coverage for the *Ferraro* Action under the EP Coverage Section of the 2016-17 Policy;

(C)    Enter judgment that, for the reasons set forth in Count III, there is no coverage for the *Ferraro* Action under the D&O Coverage Section of the 2015-16 Policy;

(D)    Enter judgment that, for the reasons set forth in Count IV, there is no coverage for the *Ferraro* Action under the D&O Coverage Section of the 2016-17 Policy;

(E)    Enter judgment that, for the reasons set forth in Count V, coverage for the *Ferraro* Action is barred by the Employment Matters Exclusion under the D&O Coverage Section of the 2015-16 and 2016-17 Policies;

(F)    Enter judgment that, for the reasons set forth in Count VI, coverage for the *Ferraro* Action is barred by the Insured vs. Insured Exclusion under the D&O Coverage Section of the 2015-16 and 2016-17 Policies;

(G)    Enter judgment that, for the reasons set forth in Count VII, coverage for the *Ferraro* Action under the D&O Coverage Section and the EP Coverage Section of the 2015-16 and 2016-17 Policies is limited in whole or in part on other grounds;

(H)    Award Scottsdale its costs incurred in this action; and

(I)     Award Scottsdale other relief to which it may be entitled.

Dated: May 22, 2017                          Respectfully submitted,


                                             ___/s/ Mary E. Borja_____
                                             Mary E. Borja, Esq.
                                             WILEY REIN LLP
                                             1776 K Street NW
                                             Washington, DC  20006
                                             Telephone: (202) 719-7000
                                             Fax: (202) 719-7049
                                             Email: mborja@wileyrein.com

                                             **Of Counsel:**
                                             Benjamin C. Eggert, Esq.
                                             (application forthcoming)
                                             David H. Topol
                                             WILEY REIN LLP
                                             1776 K Street NW
                                             Washington, DC  20006
                                             Telephone: (202) 719-7000
                                             Fax: (202) 719-7049
                                             Email:  beggert@wileyrein.com
                                                     dtopol@wileyrein.com

                                             *Attorneys for Plaintiff Scottsdale Indemnity*
                                             *Company*