IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 17-cv-01236-RBJ

SCOTTSDALE INDEMNITY COMPANY,

       Plaintiff,

v.

CONVERCENT, INC.,
O'NEAL PATRICK QUINLAN, III, and
STEVE FOSTER,

       Defendants.

_____

ORDER ON MOTIONS FOR SUMMARY JUDGMENT

_____

       This matter is before the Court on two motions: (1) defendants/counter-plaintiffs

Convercent, Quinlan, and Foster's (collectively "defendants") motion for summary judgment on

their counterclaim for declaratory judgment, ECF No. 10, and (2) plaintiff/counter-defendant

Scottsdale Indemnity Company's cross-motion for summary judgment, ECF No. 15.  For the

reasons stated below, the Court DENIES defendants' motion and GRANTS in part and MOOTS

in part Scottsdale's motion.

## I. FACTS

       This case is a declaratory judgment action filed by Scottsdale Indemnity Company,

Convercent's insurer.  Scottsdale seeks a declaratory judgment concerning its obligation to

insure defendants with respect to an Equal Employment Opportunity Commission ("EEOC")

charge and a civil lawsuit against defendants.  Both the EEOC charge and the civil case were

brought by former Convercent employee Mr. Ferraro.  In his EEOC charge, Mr. Ferraro alleged

that Convercent engaged in age discrimination and retaliation. ECF No. 1-3 at 2. In his civil case, *Ferraro v. Convercent*, No. 17-CV-00781-RBJ, Mr. Ferraro raised similar claims against defendants related to his termination from the company, including age discrimination and retaliation. Scottsdale has denied Convercent insurance coverage related to Mr. Ferraro's claims against defendants, and defendants dispute Scottsdale's grounds for denying coverage.

Scottsdale Insurance Policies

This case involves two essentially identical Business and Management Indemnity insurance policies that Scottsdale issued to Convercent. The first covered the period from May 30, 2015 to May 30, 2016 (the "2015 Policy"), and the second covered the period from May 30, 2016 to May 30, 2017 (the "2016 Policy"). These policies are "claims-made" policies, which cover claims of wrongful acts that occur during the policy period and that are reported to the insurer within a given time period. ECF No. 1-5 at 7; ECF No. 1-6 at 7. The policies each contain an "Employment Practices Coverage Section" ("EPC" section) and a "Directors & Officers & Company Coverage Section" ("D&O" section). ECF No. 1-5 at 14, 22; ECF No. 1-6 at 14, 22. Defendants concede that they are not seeking coverage for Mr. Ferraro's claims under the D&O sections of either policy, but instead that they are only seeking coverage under the EPC section of the 2016 Policy. ECF No. 8 at 9–13. As such, I will only discuss the substantive provisions of the 2016 Policy's EPC section here.

Under the EPC section of the 2016 Policy, a "wrongful act" includes an "employment practices wrongful act" which is defined (as relevant here) as "any actual or alleged: (a) violation of common or statutory . . . law prohibiting any kind of employment-related discrimination" or "(k) retaliation." ECF No. 1-6 at 15. A "claim" in this context includes an "employment practices claim," which is defined as:

2

a. a written demand against an Insured for damages or other relief;

b. a civil, judicial, administrative, regulatory or arbitration proceeding or a formal governmental investigation against an Insured seeking damages or other relief, commenced by the service of a complaint or similar pleading, including any appeal therefrom;

c. a civil proceeding against an Insured before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body, commenced by the filing of a notice of charges, investigative order or similar document; or

d. a criminal proceeding brought for an Employment Practices Wrongful Act in a court outside of the United States against any Insured, commenced by a return of an indictment or similar document, or receipt or filing of a notice of charges.

*Id.* (internal emphases removed).

The Policy indicates that "all claims arising out of the same Wrongful Act and all Interrelated Wrongful Acts shall be deemed to be a single Claim." *Id.* at 19. A claim is deemed to have been made whenever the earliest claim involving the same wrongful act or interrelated wrongful acts is first made. *Id.* The Policy covers losses incurred in connection with claims first made during the policy period and reported to Scottsdale "as soon as practicable, but in no event later than sixty (60) days after such Claim is first made against the Insureds, or the expiration of the Policy Period, whichever is later." *Id.*

<u>Underlying Employment Practices Claim</u>

The dispute in this case turns on when Mr. Ferraro's "claim" against defendants arose. As such, it is necessary to briefly outline the undisputed facts about Mr. Ferraro's allegations. Mr. Ferraro, a Convercent employee, was told in October 2015 that Convercent would be terminating his employment in early 2016. Believing that the grounds for his termination were improper, Mr. Ferraro documented his complaints in a letter dated October 20, 2015 he sent via email to Convercent's Board of Directors, its CEO Mr. Quinlan, and former President Mr.

Foster.  In that letter Mr. Ferraro asserted his belief that Convercent had violated legal protections afforded him when Convercent violated its representations to Mr. Ferraro about his continued employment and compensation; that Convercent had violated federal law including the Age Discrimination in Employment Act ("ADEA") and Age Discrimination Act of 1975, along with "an assortment of federal regulations" by terminating his employment because of his age; and that Convercent's Board members may have breached their duties and responsibilities.  ECF No. 1-1 at 9–10.

In his October letter, Mr. Ferraro also requested that while the parties "reflect on what has taken place and why," they "ensure that my salary and benefits are not interrupted until this matter is fully resolved."  *Id.* at 10.  Mr. Ferraro further requested that Convercent "reconsider the decision to terminate my employment because of my age or any unjustified or unlawful reason;" that it hire an outside source to investigate his allegations and report its findings to the Board; and that all parties "quickly get together and determine if my continued employment may be mutually addressed in a manner reflective of all issues to avoid litigation."  *Id.*  Finally, Mr. Ferraro assured the recipients of his letter that if they did not "pursue the steps outlined above," he would "pursue all appropriate remedies against everyone involved."  *Id.*

When Mr. Ferraro did not receive a response to his October letter, he followed up with another in December 2015.  In this letter he reiterated his assertions and requests, and noted that Convercent "cannot be looking forward to addressing publicly the allegations of contractual breach, misrepresentation, retaliation and discrimination."  ECF No. 1-2 at 1.  He requested that the Board consider his earlier suggestions and that he "hear from an authorized representative of Convercent to move forward in a good faith fashion."  *Id.* at 2.  Convercent did not notify Scottsdale about either of Mr. Ferraro's letters.

Despite Mr. Ferraro's requests, his employment at Convercent was terminated on January 4, 2016. He filed a charge of discrimination with the EEOC on August 5, 2016. ECF No. 1-3 at 1. He alleged discrimination on the basis of his age in violation of the ADEA, and he included an account of his allegations similar to the one provided in his October 2015 letter. *Id.* On or around August 29, 2016 Convercent gave Scottsdale Insurance notice of Mr. Ferraro's EEOC charge against it. ECF No. 1-7 at 3. In its notice, Convercent sought coverage under the 2016 Policy. *Id.* at 2. On September 23, 2016 Nationwide Insurance denied coverage of Convercent's claim on Scottsdale's behalf. ECF No. 1-8. Nationwide noted that Mr. Ferraro's EEOC charge was related to his previous letters to Convercent, so Convercent was too late in providing Scottsdale notice of the claim to obtain coverage under the 2015 Policy. *Id.* at 2–3. Moreover, since the claim arose during the 2015 Policy, Nationwide noted that Convercent could not seek coverage under the 2016 Policy. *Id.*

On March 28, 2017 Mr. Ferraro filed the above-referenced civil complaint in this Court, asserting a total of twelve counts against Convercent, Mr. Quinlan, and Mr. Foster. ECF No. 1-4. On April 4, 2017 Convercent gave Scottsdale notice of this claim against it, again invoking the 2016 Policy. ECF No. 1-9. On April 21, 2017 Nationwide again denied Convercent's claim for coverage on Scottsdale's behalf, arguing as before that Convercent had provided notice too late for the 2015 Policy and that the claim arose before the 2016 Policy. ECF No. 1-10 at 5–6.

<u>Procedural History</u>

Scottsdale filed a complaint in this Court for a declaratory judgment and declaration of the parties' rights under Convercent's insurance policies with Scottsdale. ECF No. 1. Scottsdale seeks a declaration that the defendants are not covered under either the 2015 Policy or the 2016 Policy for Mr. Ferraro's civil action before this Court or for his EEOC charge. *Id.* at 19.

Namely, Scottsdale seeks a declaration that defendants are not covered by: the Employment Practices Claims (EPC) section of either policy (Counts I and II); the Directors & Officers & Company Coverage (D&O) section of either policy (Counts III and IV); or the "Employment Matters Exclusion" or "Insured vs. Insured Exclusion" in the D&O section of either policy (Counts V and VI). *Id.* at 11–18. Finally, Scottsdale seeks a declaration that defendants' coverage is limited in whole or in part by other provisions of the policies (Count VII). *Id.* at 18.

In their answer, defendants counterclaim for a declaratory judgment declaring that Scottsdale wrongfully denied coverage and refused to indemnify them against Mr. Ferraro's civil action and EEOC charge under the EPC section of the 2016 Policy. ECF No. 8 at 13. Defendants note that since they have only sought coverage under the EPC section of the 2016 Policy, the remainder of Scottsdale's arguments are not ripe since they do not present cases or controversies.

Defendants have moved for summary judgment on their counterclaim, ECF No. 10, while Scottsdale cross-moves for summary judgment with respect to Counts I-VI, ECF No. 15. The motions have been fully briefed. *See* ECF Nos. 10, 14, 15, 17, 18, 19.

## II. STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing An*derson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

"Under Colorado law, '[t]he interpretation of an insurance policy, like any written contract, presents a question of law and, therefore, is appropriate for summary judgment.'" *Union Fire Ins. Co. v. Fed. Ins. Co.*, 213 F. Supp. 3d 1333, 1340 (D. Colo. 2016) (quoting *Tynan's Nissan, Inc. v. Am. Hardware Mut. Ins. Co.*, 917 P.2d 321, 323 (Colo. App. 1995)).

### III. ANALYSIS

As noted, defendants argue that they are entitled to coverage only under the EPC section of the 2016 Policy, and that as such Scottsdale's complaint does not raise a case or controversy ripe for adjudication with respect to the 2015 Policy or the non-EPC sections of the 2016 Policy. Defendants' motion for summary judgment therefore seeks a declaratory judgment only with respect to coverage under the EPC section of the 2016 Policy (Scottsdale's Count II). Scottsdale's cross-motion for summary judgment seeks a declaratory judgment with respect to all its reasons for denying coverage (Counts I-VI) except Count VII (its "reserved" reasons section). Thus, the parties' motions with respect to the contested EPC section of the 2016 Policy (Count II) will be treated together first, followed by Scottsdale's motion with respect to the remaining uncontested sections of the 2015 and 2016 Policies (Counts I, III-VI). I will also separately address Scottsdale's Count VII.

## A. **Coverage Under the EPC Section of the 2016 Policy [Count II].**

Defendants' motion for summary judgment seeks a declaration of its rights under the EPC section of the 2016 Policy. ECF No. 10 at 2. Invoking the definition of a "claim" in the EPC section, which includes "a written demand against an Insured for damages or other relief," defendants argue that Mr. Ferraro's October 2015 letter was not a written demand to Convercent for damages or other relief. *Id.* at 7. As such, defendants argue that Convercent was not obliged to notify Scottsdale of a claim against it after receiving the letter. *Id.* Instead, defendants contend that only Mr. Ferraro's EEOC charge and civil complaint, filed in August 2016 and March 2017, respectively, constituted claims about which Convercent was obliged to notify Scottsdale, and that Convercent did timely notify Scottsdale of those claims. *Id.* at 3.

In contrast, Scottsdale contends that Mr. Ferraro's October 2015 letter was a written demand to Convercent "for damages or other relief," such that this letter constituted a claim about which Convercent was obliged to notify Scottsdale. ECF No. 14 at 1. Scottsdale contends Mr. Ferraro's demand for his salary and benefits was a demand for damages, while his request for reinstatement and investigation into his allegations was a demand for other relief. *Id.* at 7, 3 n.2. According to the Policy's provision that "all claims arising out of the same Wrongful Act and all Interrelated Wrongful Acts shall be deemed to be a single Claim," (ECF No. 1-6 at 19), Scottsdale argues that the letter was based on the same underlying "wrongful act" as the later EEOC charge and civil suit, so all three together constitute a single claim. *Id.* at 2 n.1. As a result, Scottsdale contends that Mr. Ferraro's claim first arose in October 2015 when he sent his letter, such that his claim against Convercent did not arise under the 2016 Policy and is not covered thereby. *Id.* at 2.

I agree with Scottsdale that the EEOC charge and civil case arise out of the same wrongful acts discussed in Mr. Ferraro's October 2015 letter, namely the circumstances surrounding the termination of his employment, which he alleges violated legal protections. Thus, the dispositive question in this section is whether Ferraro's October letter constituted a claim—defined as "a written demand against an Insured for damages or other relief" about which Convercent was obliged to notify Scottsdale no later than sixty days after the end of the 2015 Policy—or not, in which case Convercent's notifications about the EEOC charge and civil case in 2016 and 2017 were timely under the 2016 Policy.

"The determination of whether a claim was made within the period of [the insurer]'s coverage depends on the construction of the provisions in the insurance policy based on principles of contract interpretation." *Nat'l Cas. Co. v. Great Southwest Fire Ins. Co.*, 833 P.2d 741, 744 (Colo. 1992). "If the language of a contract is unambiguous, a court may appropriately enter summary judgment on the issue of interpretation." *Beaver Creek Coal Co. v. Nev. Power Co.*, 968 F.2d 19 (Table), 1992 WL 113747, at *2 (10th Cir. 1992) (citing *Gomez v. Am. Elec. Power Serv. Corp.*, 726 F.2d 649, 651 (10th Cir. 1984)). "However, an ambiguous contract cannot be interpreted on summary judgment if genuine issues of material fact exist over the parties' intended meaning." *Id.* To determine "whether a provision is ambiguous, the court must examine and construe the language 'in harmony with the plain, popular, and generally accepted meaning of the words employed and with reference to all provisions of the document.'" *Wota v. Blue Cross and Blue Shield of Colo.*, 831 P.2d 1307, 1309 (Colo. 1992). "Mere disagreement between the parties about the meaning of a provision in a policy does not create an ambiguity." *Id.* (citing *Terranova v. State Farm Mut. Ins. Co.*, 800 P.2d 58, 60 (Colo. 1990)). "Rather, the

parties' differing interpretations of the contractual language must each be tenable in order to create ambiguity as a matter of law." *Beaver Creek*, 1992 WL 113747, at *2.

Although the parties debate the interpretation of "claim," neither party contends that the term "claim," "demand," "damages," or "relief" is ambiguous. Terms in insurance policies are not ambiguous when they have "plain and ordinary meanings that can be applied to the language of the insurance policy." *Berry v. Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 809 (10th Cir. 2009). Because "claim" is defined in the Policy and the remaining terms can be given their plain and ordinary meanings, none of these terms is ambiguous. The interpretation of the Policy is thus appropriate for summary judgment.

The parties cite various cases to support their arguments about why the Ferraro letter is or is not a claim. The only Colorado Supreme Court case cited, *National Casualty Co. v. Great Southwest Fire Ins. Co.*, 833 P.2d 741,745 (Colo. 1992), is inapposite for this purpose because the policy in that case did not define the term "claim."[1] *See City of Santa Rosa v. Twin City Fire Ins. Co.*, 143 P.3d 196, 201 (N.M. Ct. App, 2006) (finding *National Casualty* inapposite where the policy at issue defined the term "claim"). Similarly, the only cited case from the Tenth Circuit to address the issue, *Berry*, 586 F.3d 803, assumed without analysis that the letter in that case was a claim. As such, I find the out-of-circuit cases cited to be more instructive. For the reasons explained below, Mr. Ferraro's October 2015 letter was a claim.

In *Tucker v. American International Group, Inc.*, No. 09-CV-1499-CSH, 2015 WL 403195, at *14–15 (D. Conn. 2015), a pre-suit letter asserting a violation of law and seeking reinstatement in a previous job was found to be a claim. In that case a claim was defined to include "a written demand for monetary or non-monetary relief." *Id.* at *6. The letter at issue

---

[1] Scottsdale cites *National Casualty* instead for the proposition that a demand for reinstatement in a position is a demand to enforce a right. Because the policy at issue here does not require that "other relief" demanded be to enforce a right, Scottsdale's argument on this point is unnecessary.

was written by the client's attorney and sent to the client's previous employer. *Id.* at *1. The letter alleged that the client had been terminated in violation of several laws and listed the employer's financial exposure, including the client's reinstatement or front pay, lost back wages, reimbursement for lost benefits, and attorney's fees and damages. *Id.* The letter moreover advised that if the employer did not reach out to resolve the matter, the attorney was authorized to file administrative complaints, and it indicated that a severance package would suffice to provide a full release of liability. *Id.* The court held that the letter was a claim because it "was not a mere overture or attempt to discuss issues that arose during . . . employment" but was instead "a thinly veiled ultimatum, a prelude to litigation." *Id.* at *14.

Defendants attempt to distinguish *Tucker* on the grounds that the letter in that case was written by an attorney, was clear about the damages the employee would seek in a lawsuit, and explicitly addressed a potential settlement and the attorney's authority to file an EEOC charge. ECF No. 17 at 4. I am not convinced. Like the letter in *Tucker*, Mr. Ferraro's letter was a thinly veiled ultimatum. Mr. Ferraro listed the specific legal violations that he believed had occurred in relation to his termination and suggested that the parties "get together and determine if my continued employment may be mutually addressed in a manner reflective of all issues to avoid litigation." ECF No. 1-1 at 9–10. In so doing, Mr. Ferraro was impliedly requesting a settlement of the issues he raised. Additionally, he warned that he would "pursue all appropriate remedies" if his recommended steps were not taken. *Id.* Such a statement should reasonably have been read as an ultimatum and a threat to engage in litigation if his requests were not met.

Though Mr. Ferraro did not hire an attorney to write his letter, he was a sophisticated professional with experience in the field of internal investigations, including a focus on discrimination, and he clearly articulated the alleged legal violations that he believed had

occurred. *Id.*; *see* ECF No. 1-1 at 2. Moreover, it would be unreasonable to require that a written demand for damages or other relief come from an attorney rather than from the individual seeking the relief, especially when, as in this case, that individual expressly cites alleged violations of law and conveys a desire to avoid litigation. *Id.* at 10. Additionally, since Mr. Ferraro was writing on his own behalf, he had no reason to allude to his authority to file a complaint, unlike the attorney in *Tucker*; instead he expressly threatened to pursue all appropriate remedies as needed. *Id.* Mr. Ferraro's letter contained enough information to put defendants on notice of his willingness to litigate the matters he raised if a settlement was not possible. *Id.* Defendants were thus given fair warning of Mr. Ferraro's complaints and of the fact that he would likely sue if his requests were not addressed. The absence of an attorney was not a legitimate reason for defendants' ignoring Mr. Ferraro's requests or failing to see his letter for what it was: a demand for relief. Thus, like the letter in *Tucker*, Mr. Ferraro's letter also constituted a claim.

I am similarly persuaded by *Westrec v. Marina Management, Inc.*, 163 Cal. App. 4th 1387 (Cal. App., 2008), in which a pre-suit letter asserting wrongful termination was found to be a claim. A "claim" in that case was defined in part as "a written demand for civil damages or other relief commenced by the Insured's receipt of such demand." *Westrec*, 163 Cal. App. 4th at 1389. In that case the letter sent by a former employee's attorney notified the employer that the employee had received "Right to Sue" letters. *Id.* at 1390. The letter asked whether the employer would rather "resolve or mediate this matter," or if the employee would need to file a lawsuit. *Id.* The court construed "the letter as a settlement demand seeking monetary compensation for the alleged wrongdoing" because the letter's "meaning was clear that, absent some form of negotiated compensation, [the employee] would commence a lawsuit against [the

employer].” *Id.* at 1393. As such, the court found that the “insistence on compensation by way of settlement in lieu of litigation constituted a demand for ‘civil damages or other relief’ within the ordinary meaning of those words.” *Id.* at 1390.

Although the threat to litigate was more overt in *Westrec*, the same principles animating the court’s decision in that case inform my assessment of Mr. Ferraro’s letter in this case. Here, as in *Westrec*, Mr. Ferraro noted his preference to resolve the matter without litigation, but indicated that he would “pursue all appropriate remedies against everyone involved” if his requests were not met. ECF No. 1-1 at 10. Thus, as in *Westrec*, it was clear that “absent some form of negotiated compensation, [Mr. Ferraro] would commence a lawsuit against [the defendants].” *Westrec*, 163 Cal. App. 4th at 1393. Additionally, though the letter in *Westrec* was sent by an attorney and referred to the “right-to-sue,” such a requirement is not implied in the Policy and would be unreasonable, as noted with respect to *Tucker. Id.* at 1390. Thus, Mr. Ferraro’s letter constituted a claim despite the fact that he did not engage counsel to send it.

Other courts have construed similar definitions for “claim” broadly. *See, e.g.*, *Nat’l Union Fire Ins. Co. v. Zillow, Inc.*, C16-1461 JLR, 2017 WL 1354147, at *5 (W.D. Wash., Apr. 13, 2017) (finding a letter asking a company to remove images from its website and indicating that the requester was “providing this notice . . . with the reasonable belief that [] copyrights are being infringed” was a claim under a policy defining a claim in part as a written demand for money, services, non-monetary relief, or injunctive relief); *Fed. Ins. Co. v. Ill. Funeral Dirs. Ass’n*, No. 09 C 1634, 2010 WL 5099979, at *5 (N.D. Ill., Dec. 8, 2010) (finding that a letter threatening action if the under-funding of a trust were not rectified was a demand for non-monetary relief under a policy defining “claim” similarly to the policy here, and noting that no explicit threat of civil action was required to constitute a claim); *Peoplesupport Rapid Text Inc.*

*v. Ill. Union Ins. Co.*, No. SACV 08-00103-JVS, 2009 WL 10314275, at *4 (C.D. Cal. Apr. 9, 2009) (finding that a plaintiff's oral ultimatum that the defendant either buy out the plaintiff's stock shares or face further litigation was a demand for non-monetary relief under a policy defining claim in part as "any written or oral demand for damages or other relief.").

Defendants argue that these cases are inapposite because in each of them there was a demand for specific relief, whereas, they argue, Mr. Ferraro's letter did not contain such a specific demand. ECF No. 17 at 4. Instead, defendants construe Mr. Ferraro's letter as "part of the negotiation of his continued employment," in which he "was requesting the board to reconsider and renew his employment contract." *Id.* I disagree with this characterization. As described above, Mr. Ferraro's letter requested that defendants reconsider their decision to terminate his employment, ensure that his salary and benefits not be terminated, and "get together" to resolve the issues without litigation. ECF No. 1-1 at 10. If these requests were not met, Mr. Ferraro asserted that he would seek all remedies against all involved parties. *Id.* Thus, as in the cases cited by Scottsdale, Mr. Ferraro's letter contained a demand for specific relief.

Defendants cite several cases in which they argue that similar letters were construed as non-claims. For example, in *St. Paul Mercury Ins. Co. v. RMG Capital Corp.*, No. SACV 12-450-JST, 2012 WL 2069677 at *1 (C.D. Cal. June 7, 2012), the insurance policy at issue defined a "claim" as "a written demand against an Insured for monetary damages or non-monetary relief," along with a civil, criminal, or arbitration or administrative proceeding. The court interpreted the term "relief" according to the *Blacks Law Dictionary* and found that "a 'Claim' only included a demand—i.e., a request for something as a matter of right or insistence on a course of action—for 'non-monetary relief' in the form of a court-ordered benefit." *Id.* at 4. Thus, a letter requesting return correspondence confirming that a party intended to perform

pursuant to the terms of the loan at issue was not a claim. *Id.* The court also noted that the letter

was not a claim because "[i]t expressed no entitlement to, or threat to seek, court-ordered relief

of any kind." *Id.* at 5. Because the letter did not imply that the party would seek specific

performance or an injunction if the recipient did not agree to the sender's interpretation, the letter

was not a written demand for non-monetary relief. *Id.*

      *St. Paul* has been interpreted broadly as defining a "demand for non-monetary relief" as

"an expression of an 'entitlement to, or threat to seek, court-ordered relief of any-kind' should

the party not comply with the demand." *Weaver v. Axis Surplus Ins. Co.*, No. 13-CV-7374-SJF-

ARL, 2014 WL 5500667, at *9 (E.D.N.Y. Oct. 30, 2014). Thus, applying *St. Paul*, the court in

*Weaver* found that a "request to cease all offers and sales of business opportunity, which

threatens court-ordered relief should the requested relief not be granted, is a demand for non-

monetary relief." *Id.* The *Weaver* court noted that the demand to cease offers and sales of

business was a demand for "non-monetary relief that was equitable in nature." *Id.* Similarly in

this case, Mr. Ferraro's letter contained requests for equitable relief (e.g., reconsideration of the

decision to terminate his employment and investigating the matters he raised) as well as demands

for monetary compensation (e.g., ensuring his salary and benefits were not interrupted while the

matters were resolved). ECF No. 1-1 at 10. Moreover, unlike in *St. Paul*, Mr. Ferraro expressed

a threat to seek court-ordered relief if the issues were not resolved when he threatened to pursue

"all appropriate remedies" against all parties involved. *Id.* Thus, his letter was more than just a

request for "return correspondence clarifying" the parties' agreement to perform under an

agreement, but was instead a request for the type of relief a court could order and a threat to seek

such court-ordered relief as needed. *St. Paul*, 2012 WL 2069677, at *4.

Defendants also cite *Employers' Fire Ins. Co. v. ProMedica Health Sys., Inc.*, 524 F. App'x 241 (6th Cir. 2013), in which the Federal Trade Commission ("FTC") was investigating whether antitrust violations had occurred to determine whether seeking injunctive relief would be appropriate. The Sixth Circuit found that letters notifying the party in question of the investigation, a resolution authorizing a compulsory process connected with that investigation, and a letter requesting that the party delay a proposed merger did not constitute claims about which the party was obliged to inform its insurer. *Id.* at 253. In that case, the insurance policy defined "claim" in part as "a written demand for monetary, non-monetary or injunctive relief." *Id.* at 243. In addition to noting its "ordinary meaning," the court noted that "relief" in a legal context means "'the redress or benefit, esp. equitable in nature (such as an injunction or specific performance), that a party asks of a court.'" *Id.* at 251 (quoting *Black's Law Dictionary* 1404 (9th ed. 2009)). Since the FTC had neither alleged that any violations had occurred nor requested injunctive relief, the court found there was no written demand seeking relief. *Id.*[2]

Mr. Ferraro's demand was distinct from the FTC's notice of investigation in *Employers' Fire*. The *Employers' Fire* court emphasized that the FTC merely notified the party of its investigation, but did not allege a violation, whereas Mr. Ferraro did expressly allege several violations of law. *See* ECF No. 1-1 at 9 (asserting that the parties violated protections afforded by law when they violated representations to Mr. Ferraro and listing violations of the ADEA, the Age Discrimination Act of 1975, and "an assortment of federal regulations"). Unlike the FTC, which was not far enough along in its investigation to allege specific violations or demand relief related to those violations, Mr. Ferraro both alleged specific violations and demanded relief that he believed would remedy the violations.

---

[2] However, the court noted that the FTC's letter requesting that the party delay a proposed merger could be considered a written demand for non-monetary relief, though this claim ultimately failed because the relief sought was not to remedy a "wrongful act," namely, an alleged antitrust violation. *Id.* at 252.

Additionally, to the extent defendants cite *Employers' Fire* for the proposition that a claim must seek redress or benefit *from a court*, I do not agree. In construing the meaning of "written demand . . . for damages or other relief" in this context, I am guided by "the general rule of contract construction that a court should seek to 'give effect to all provisions so that none will be rendered meaningless.'" *Pub. Serv. Co. of Colo. v. Wallis and Cos.*, 986 P.2d 924, 933 (Colo. 1999) (quoting *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984)). As noted above, the 2016 Policy defines a claim as either "a written demand against an Insured for damages or other relief" *or* "a civil, judicial, administrative, regulatory or arbitration proceeding . . . against an Insured seeking damages or other relief . . . commenced by the service of a complaint or similar pleading." ECF No. 1-6 at 15. Requiring that a written demand for damages or other relief seek such relief or damages *from a court* would render the first definition duplicative of the one that follows it, which contemplates making such demands via a complaint before a court. *Id.* As such, requiring that the relief under the "written demand . . . for damages or other relief" prong be sought from a court would render this prong meaningless. Instead, a more reasonable interpretation recognizes that while "damages or other relief" can include the type sought from a court, such as monetary damages or equitable relief, the party need not make these requests of a court. As noted above with respect to *St. Paul*, Mr. Ferraro's requests that Convercent reconsider the decision to terminate his employment and hire an investigator were both equitable in nature. I will not require that Mr. Ferraro actually have demanded this relief of a court, but instead find that these requests fall into the "other relief" category because they could be sought from a court.

Because Mr. Ferraro's October 2015 letter constituted a demand for damages or other relief, it was a claim. Thus, Mr. Ferraro's claim (later reasserted in the 2016 EEOC charge and

2017 civil case) was first raised in October 2015, and Convercent should have given notice to Scottsdale accordingly. As a result, Mr. Ferraro's claim is not covered under the 2016 Policy. Defendants' motion for summary judgment is therefore DENIED, and Scottsdale's cross-motion for summary judgment with respect to Count II is GRANTED.

**B. <u>Coverage Under the 2015 Policy and Non-ECP Sections of the 2016 Policy.</u>**

In its cross-motion for summary judgment Scottsdale seeks a declaration that defendants are not covered under either policy, as set out in Scottsdale's Counts I and III-VI. ECF No. 15 at 1–2. Scottsdale acknowledges that defendants neither demand coverage under the 2015 Policy nor dispute the lack of coverage under the D&O sections of either the 2015 or the 2016 Policies. ECF No. 15 at 2. However, Scottsdale still contends that there is a "very real dispute between the parties," noting that defendants' answer did not admit that they are not covered under these sections, and that before Scottsdale filed its complaint defendants sought arbitration with reference to both policies. *Id.*; ECF No. 19 at 8.

In their response, defendants reassert that they did not seek coverage other than under the EPC section of the 2016 Policy (Scottsdale's Count II). ECF No. 18 at 1. As such, defendants argue that the Court lacks subject matter jurisdiction "because there is no dispute giving rise to a case or controversy with respect to coverage" under Scottsdale's Counts I or III-VI. *Id.* at 2; *see also id.* at 3. Defendants therefore request that Scottsdale's motion for summary judgment be denied with respect to these counts. *Id.* at 3. Additionally, defendants seek dismissal of Count VII, although Scottsdale did not seek summary judgment on this Count. *Id.*[3]

"'It is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute

---

[3] A response to a motion for summary judgment is not the proper venue to raise a motion to dismiss. D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion.").

which affects the behavior of *the defendant toward the plaintiff*.'" *Jordan v. Sosa*, 654 F.3d

1012, 1025 (10th Cir. 2011) (emphasis in original) (quoting *Rio Grande Silvery Minnow v.*

*Bureau of Reclamation*, 601 F.3d 1096, 1121 (10th Cir. 2010). "Thus, where a plaintiff seeks a

declaratory judgment against his opponent, he must assert a claim for relief that, if granted,

would affect the behavior of the particular parties listed in his complaint." *Id.* In *Ace American*

*Insurance Company v. Dish Network, LLC*, No. 13-CV-00560-REB-MEH, 2014 WL 811993 at

*3, (D. Colo. March 3, 2014), another judge in this district found it proper to take "Dish at its

word" when Dish represented in a sworn declaration "that 'Dish Network is not challenging

ACE's denial of coverage'" with respect to a lawsuit. As a result, the court found that ACE had

failed to establish "the existence of an actual case or controversy with regard to coverage under

the ACE policies." *Id.* The court noted that because "Dish does not claim an entitlement to

coverage" for the lawsuit at issue, "a judgment declaring that there is no such coverage under an

ACE policy would not change or affect the behavior of Dish toward ACE." *Id.*

 Similarly in this case, defendants have provided the sworn declaration of Convercent's

Chief Financial Officer averring that "Convercent and the individual defendants have not

contested and are not contesting SIC's denials of coverage with respect to the Employment

Practices Coverage section of the 2015-2016 Policy, or the D&O Coverage section of the 2015-

2016 Policy or the 2016-17 Policy, including the Employment Matters Exclusion or the Insured

verses [sic] Insured Exclusion." ECF No. 18-2. Thus, as in *Ace*, because defendants do not

claim an entitlement to coverage under anything other than the EPC section of the 2016 Policy, a

judgment declaring that there is no such coverage under any other provision "would not change

or affect the behavior of [defendants] toward [Scottsdale]." *Ace*, 2014 WL 811993, at *3.

I am not convinced by Scottsdale's argument to the contrary. Scottsdale contends that there was a viable case or controversy when it filed its complaint, since Convercent requested arbitration with respect to both policies only weeks before. ECF No. 19 at 8. The arbitration request does indeed refer in its description of the matter to "Policy Nos: EKI3159121 [the 2015 Policy]; EKI3189867 [the 2016 Policy.]" ECF No. 19-1 at 2. However, just days after sending its arbitration request, Convercent clarified that the request was in relation to the 2016 Policy only. ECF No. 18-1 at 1 ("For the avoidance of doubt, the Demand for Arbitration will be for coverage under Policy No. EKI3189867 for the period 5/30/2016 to 5/30/2017."). Additionally, Convercent has been consistent in seeking coverage only under the 2016 Policy, as when it sent notice of Ferraro's EEOC charge to Scottsdale. *See* ECF No. 1-7 at 2. In that notice, the only reference to a specific policy is contained in the subject line, which refers only to the 2016 Policy number. *Id.*

However, even if some case or controversy did exist at the time Scottsdale filed its complaint (for example, with respect to the D&O portion of the 2016 Policy, since none of Convercent's communications specifically disclaimed its right to protest the denial of coverage under that section), a live case or controversy must exist not only at the time the complaint is filed, but also at the time the Court acts. *Columbian Financial Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1381–82 (10th Cir. 2011). In *Columbian*, the defendant BancInsure stipulated during litigation that the policy at issue covered the plaintiff's claim. *Id.* at 1373. As a result of the stipulation, no controversy existed about claim coverage by the time the district court ruled on the case. *Id.* The Tenth Circuit noted also that the parties had failed to present "any reason to believe that a claim against the Insureds would arise in the future that would lead to a dispute" regarding coverage. *Id.* Although defendants in this case have not stipulated that coverage for

their claims was properly denied pursuant to the 2015 Policy or the D&O section of the 2016 Policy, their sworn declaration that they "have not contested and are not contesting" the denial of coverage has a similar effect. As in *Ace,* I will take defendants at their word. 2014 WL 811993, at *3. A judgment declaring there is no such coverage would not change defendants' behavior toward Scottsdale. As such, I find there is no case or controversy at this stage in the litigation with respect to Scottsdale's Counts I and III-VI.

"Absent a case or controversy, this court does not have subject matter jurisdiction over the claim asserted in" Counts I or III-VI. *Ace*, 2014 WL 811993, at *3 (citing *United States v. Wilson*, 244 F.3d 1208, 1213 (10th Cir. 2001). Scottsdale's Counts I and III-VI are therefore DISMISSED, and Scottsdale's cross-motion for summary judgment is deemed moot with respect to these Counts.. *See* Fed. R. Civ. P. 12 (h)(3).

**C. Reserved Coverage [Count 7].**

As referenced above, Scottsdale seeks summary judgment only with respect to Counts I-VI, excluding Count VII. ECF No. 15 at 3. In Count VII, Scottsdale seeks a declaration that defendants' coverage is limited by other provisions in the policies not addressed elsewhere. ECF No. 1 at 18 ("including but not limited to the D&O Coverage Section, Sections B.7 . . . C.1.f . . . C.1.g, C.1.o, and C.2.a, and the EP Coverage Section, Sections B.10, C.5 and C.10, and General Terms and Conditions Section D.2 of the Policies.").

In their response to Scottsdale's cross-motion for summary judgment, defendants request that the Court dismiss this Count for failure to create a case or controversy for the Court to decide. ECF No. 18 at 3. Although a response to a motion for summary judgment is not the proper venue to raise a motion to dismiss, in this case I must dismiss sua sponte those facets of Count VII about which the Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

Because I agree with Scottsdale that defendants are not covered under the EPC section of the 2016 Policy, and because defendants concede they are not seeking coverage under the 2015 Policy or the D&O section of the 2016 Policy, this Count seeking a declaration that "coverage for the *Ferraro* Action under the D&O Coverage Section and the EP Coverage Section of the 2015-16 and 2016-17 Policies is limited in whole or in part on other grounds" does not present an actual case or controversy and is dismissed as moot.

## ORDER

For the reasons stated above, defendants' motion for summary judgment [ECF No. 10] is DENIED, and Scottsdale's motion for summary judgment [ECF No. 15] is GRANTED in part and MOOT in part. The Court declares that there is no coverage under the EPC section of the 2016-17 Policy for the Ferraro demand, EEOC charge or lawsuit. Defendants have conceded that there is no coverage under the 2015-16 Policy or the D&O section of the 2016-17 Policy, thus mooting those issues. Accordingly, final judgment will enter in favor of the plaintiff, Scottsdale Indemnity Company and against defendants Convercent, Inc.; O'Neal Patrick Quinlan, III; and Steve Foster. As the prevailing party, plaintiff is awarded its reasonable costs to be taxed by the Clerk of Court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 14th day of November, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge